716 P.2d 1380

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Scott Alan HIASSEN, and Joe Schuck also known as Joaquin Schuck, Defendants-Appellants,**

Nos. 15680, 15681.

Court of Appeals of Idaho.

April 1, 1986.

Kim R. Lindquist, Weiser, for defendants-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Joe Schuck and Scott Hiassen were convicted, in a joint trial, of first degree burglary and grand theft. After the theft counts were reduced to petit theft, the defendants received withheld judgments and were placed on probation. On appeal they contend that evidence, including confessions, was erroneously admitted and that

their motion to postpone the trial should have been granted. We affirm.

This case involves an unusual situation. During the relevant period Joe Schuck, then eighteen years old, lived in Council, Idaho, with Rick Waters, an Adams County deputy sheriff. Schuck is the nephew of Mrs. Waters. Although the Waters were not his legal guardians, they treated Schuck as a member of the family.

On March 27, 1984, Officer Waters was summoned to the Council High School to investigate a break-in. Several rooms had been entered and a camera, a radio/cassette player and other items were missing. On one interior door, which had been kicked open, Waters found a shoeprint. Upon returning home Officer Waters found that he had a pair of tennis shoes with the same print. These shoes had been given to him by Schuck. Waters knew that Schuck had a similar pair. Waters was unaware of any one else with this type of shoe, and was informed by the school coach that this type of shoe was uncommon in the Council area.

The next evening Waters talked to Schuck alone at the sheriff's office about the break-in. Waters mentioned the shoeprint evidence and the fact that Schuck had not come home the previous night. Schuck "was advised of his rights" and was told he was a suspect. Waters asked Schuck where he had been the previous evening. Schuck denied being involved in the break-in, and told Waters he had been with Scott Hiassen at the time. Waters then took Schuck's right shoe. Later Waters spoke with Hiassen who corroborated Schuck's story.

On April 2 the sheriff called Waters at home and told him that a witness had implicated Schuck and Hiassen. Waters confronted Schuck with the mounting evidence: the witness, the similar shoeprint and the fact that Schuck was not home on the night of the crime. Schuck then admitted that he had made the shoeprint. Two hours later Waters and Schuck went to the sheriff's office where a taped confession

was taken. Later Hiassen also gave a taped confession.

A suppression hearing was held to determine the admissibility of the shoe and the confessions. The district court ruled that the shoe had been illegally seized, but that the relationship between the shoe and the print on the door would have inevitably been discovered and that testimony about that relationship was admissible under *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The court also ruled the confessions admissible because they flowed not only from the shoeprint evidence, but also from the fact that a witness had been found.

We first address the defendants' exclusionary rule argument. Defendants contend that the prosecution violated the court order suppressing the shoe when Waters testified that he owned a shoe with a print "identical" to the print found on the door, that the shoes were given to him by Schuck, that he knew Schuck had a "similar" pair, and that such shoes were uncommon in the Council area. The shoe was not offered into evidence, nor were any tests performed or physical comparisons made between the shoe and the print. Schuck also argues that his confession was the "fruit" of the illegal seizure and was inadmissible. Because Hiassen's inculpatory statement was derived from Schuck's confession, Hiassen argues that his confession also was inadmissible.

We need not decide whether the "inevitable discovery" exemption to the exclusionary rule applies to this case. Before the exclusionary rule is invoked at all, the challenged evidence must be "in some sense the product of illegal government activity." *Nix v. Williams*, 467 U.S. at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387 (quoting *United States v. Crews*, 445 U.S. 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980)). Notwithstanding the state's concession to the contrary, we find that the "seizure" of the shoe to examine it was not an act within the ambit of the fourth amendment protection. There is no reasonable expectation of privacy in the appearance of the soles of one's shoes. *United States v. Ferri*, 778 F.2d 985 (3rd Cir.1985); *State v. Curry*, 103 Idaho 332, 647 P.2d 788 (Ct.App.1982); *State v. Coleman*, 122 Ariz. 130, 593 P.2d 684 (1978), *affirmed in part, modified on other grounds*, 122 Ariz. 99, 593 P.2d 653 (Ariz.1979). Officer Waters' suspicions were sufficient to justify a warrantless examination of the shoe. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The "seizure" of the shoe for this limited purpose was a minimal intrusion. Subsequent retention of the shoe without a warrant was adequately remedied by suppression of the shoe as physical evidence.

We conclude that it was not error for the trial court to allow Waters to testify about his observations of Schuck's shoe and his comparison of the shoeprint at the scene of the burglary with the tread pattern on the shoe. It follows that the inculpatory statements made by Schuck to Waters need not have been suppressed as the fruits of an illegal "seizure."

Schuck next argues that his two inculpatory statements were involuntary. He contends that the first such statement, made at the Waters residence, was the product of coercive non-custodial interrogation. Schuck claims that the subsequent taped confession was given as a result of promises for leniency and that his waiver of fifth and sixth amendment rights was ineffective.

In the statement made in the Waters' home where Schuck was living, Schuck admitted that the shoeprint found in the school was his. Schuck concedes that he was not in custody, therefore the procedural protections of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not required. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *State v. Silva*, 106 Idaho 14, 674 P.2d 443 (Ct.App.1983). Even so, a confession must still be voluntary within the meaning of the fifth and fourteenth amendments. *Bram v. United*

*States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

> Under this test, the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was "free and voluntary: that is, (it) must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence...."

*Malloy v. Hogan,* 378 U.S. at 7, 84 S.Ct. at 1493 (quoting *Bram v. United States,* 168 U.S. at 542–43, 18 S.Ct. at 187). In *Beckwith* the United States Supreme Court, after ruling that custody was the catalyst for Miranda warnings, addressed non-custodial interrogation.

> We recognize, of course, that non-custodial interrogation might possibly in some situations, by virtue of some special circumstances, to be characterized as one where "the behavior of ... law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined...." *Rogers v. Richmond,* 365 US 534, 544, 5 LEd2d 760, 81 SCt 735 (1961). When such a claim is raised, it is the duty of an appellate court, including this Court, "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina,* 384 US 737, 741–742, 16 L Ed 2d 895, 86 S Ct 1761 (1966).

*Beckwith v. United States,* 425 U.S. at 347–48, 96 S.Ct. at 1617.

■ Schuck contends that the *de facto* father-son relationship between himself and Officer Waters created a coercive environment falling within the "special circumstances" of *Beckwith.* We do not believe that this relationship renders the statements involuntary. Schuck contends that the manipulation of the relationship constitutes the "improper influence" referred to in the *Bram* line of cases. However, we are not shown what manipulation occurred

that resulted in the first statement and we decline the invitation to speculate. By our independent review of the record, we find that a preponderance of the evidence establishes the voluntariness of Schuck's first inculpatory statement. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *State v. Silva, supra.*

Between Schuck's first statement and his second, more detailed taped "confession," Officer Waters made a promise. Schuck asserts that he was promised treatment similar to that given another suspected burglar in an unrelated case. That burglar had confessed, implicating two others, and was not charged. The state contends Officer Waters promised only that Schuck would not be jailed pending court disposition of the case.

■ Neither the magistrate nor the district judge made explicit findings as to the extent of the promise. The district judge had the opposing affidavits of Schuck and Waters and no benefit of live testimony. He determined the credibility of the affiants in favor of Officer Waters and ruled the confessions voluntary. Even though we exercise an independent review of the entire record on the voluntariness issue, *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct.App.1985), we can accept the findings of the underlying historical facts of the trial judge. *See Miller v. Fenton,* — U.S. —, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983). Implicit in the magistrate's voluntariness ruling, and that of the district judge, is the factual conclusion that a promise was limited to pretrial freedom. Upon our review of the record, we agree. Still, if the confession given at the sheriff's office was extracted by the coercive effect of this limited promise, it would be deemed involuntary and inadmissible. *Malloy v. Hogan, supra.* The record discloses that a promise was made, but not that the confession was "extracted" by its use. Schuck had already admitted participation in the crime prior to any promises. The first inculpatory statement had been given just two hours earlier.

Once Schuck cast off his pretense of innocence there was no reason for him not to supply a more detailed statement. That the second statement was produced by the first is more convincing than the claim it was induced by intervening promises.

■ Before Schuck gave the taped statement he was informed of his *Miranda* rights. He signed a waiver card and confessed. He now claims he did not knowingly and intelligently waive these rights. This claim is not premised on the assertion that Schuck failed to understand these rights; but, rather that he did not know how to exercise them. However, Schuck did not in *any* manner attempt to exercise his rights to silence and counsel. We hold that Schuck's waiver of rights was valid and that the confession was voluntary and properly admitted. Whether or not Schuck was in custody when he gave his taped statement is irrelevant to this holding since the mandate of *Miranda* was satisfied.

The co-defendant Hiassen claims that his confession was derived by Schuck's earlier coerced confession. Since we find no violation of Schuck's rights, we also hold that Hiassen's confession was properly obtained and used.

Next, defendants contend the court erred in denying their motion to vacate and continue the trial. Howard Tyler, the third participant in the school break-in, was called as a witness by the state. The prosecutor disclosed to the defense late on a Friday that Tyler would testify. The trial was to begin on the following Monday. Counsel requested a continuance in order to interview Tyler in preparation for trial and to determine whether Tyler's statements were illegally obtained. Tyler was returned to Adams County from a detention facility near Cottonwood, Idaho on the same Friday. Counsel for defendants had earlier represented Tyler on the same charges made against Schuck and Hiassen. The district court determined that there could be no surprise and that defense counsel would have an opportunity to interview Tyler.

■ When a claim of late disclosure, rather than non-disclosure is made, the question is whether the lateness so prejudiced the defendants' preparation that they were denied a fair trial. *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001 (1978); *State v. Hansen,* 108 Idaho 902, 702 P.2d 1362 (Ct. App.1985). The disposition of a motion for a continuance is in the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion. *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977); *State v. Hansen, supra.* In this case, defense counsel had been aware of the identity of the third participant in the crime. At the suppression hearing, held eleven days before trial, defense counsel learned that Tyler was the witness whose existence was used to confront Schuck just before he confessed. We agree with the district court that there was no surprise. Given the opportunity to interview Tyler at the Adams County jail and the opportunity to cross-examine him at trial, we cannot conclude that the court abused its discretion in denying the motion.

■ Lastly, defendants allege error in the admission of the radio/cassette player into evidence because it was not sufficiently identified as the one taken from the school. This contention is without merit. The radio was admitted upon testimony from a school teacher. Although the teacher could not positively identify it, Howard Tyler, the co-perpetrator, later positively identified the radio as the one taken. Assuming, but not deciding, that a complete foundation for admission of this piece of evidence had not been laid until Tyler testified, no unfair prejudice has been shown to result from its "premature" admission. *See State v. Smoot,* 99 Idaho 855, 862, 590 P.2d 1001, 1008 (1978).

We find no error in the admission of evidence, including the confessions. Accordingly, we affirm the orders withholding judgment and placing the defendants on probation.

WALTERS, C.J., and BURNETT, J., concur.