757 P.2d 720
STATE of Idaho, Plaintiff–Appellant,

v.

Dale James KYSAR,
Defendant–Respondent.

No. 17039.

Court of Appeals of Idaho.

July 5, 1988.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Jay A. Kohler, Idaho Falls, for defendant-respondent.

BURNETT, Judge.

Dale Kysar stands accused of robbery. The case comes to us on appeal by the state from an order suppressing inculpatory statements made by Kysar during custodial police interrogation. The sole question presented is whether the statements were made voluntarily. For reasons explained below, we conclude that they were not. Accordingly, we affirm the suppression order and remand the case for further proceedings.

The underlying facts may be stated briefly. Dale Kysar and his brother David were charged with robbing a Pizza Hut restaurant in Idaho Falls. After Dale was booked into the local jail, he was placed in an interrogation room. He was crying and visibly upset. At some point, he asked to speak with the detective in charge of the investigation. The detective agreed to meet with Kysar. They engaged in a thirty-minute conversation during which Kysar made statements admitting his involvement in the robbery. The conversation was recorded. Kysar also gave a written statement concerning the crime. Subsequently, Kysar filed a pretrial motion to suppress his statements because they had been induced by promises of leniency by the interrogating detective. The district judge

agreed and granted the motion. This appeal followed.

■ The issue before us is governed by the constitutional standard of voluntariness under the Fifth and Fourteenth Amendments. *See generally State v. Hiassen,* 110 Idaho 608, 716 P.2d 1380 (Ct.App.1986). No additional question has been raised as to the procedural safeguards established in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Voluntariness in the constitutional sense must be shown by the totality of circumstances surrounding police efforts to obtain incriminating statements. *See* 2 W.E. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 25.1 (2d. ed. 1988) (hereinafter cited as RINGEL). A statement is voluntary if it is the product of a free will. *State v. Powers,* 96 Idaho 833, 537 P.2d 1369 (1975). Under this standard, it must be determined that the statement was not extracted "by any sort of threats or violence, nor obtained by any direct or implied promises...." *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

■ When this standard is applied on appeal our task is two-fold. First, we defer to the lower court's findings of fact, if they are not clearly erroneous. *See State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Ct. App.1983). Second, we exercise free review over the question whether the facts found are constitutionally sufficient to show voluntariness. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed. 2d 895 (1966); *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct.App.1985). In the present case, the facts surrounding Kysar's confession are undisputed. Therefore, our analysis consists solely of determining whether the confession was voluntary as a matter of law.

The recorded conversation in the interrogation room included two exchanges which form the basis of Kysar's challenge to the voluntariness of his ensuing statements. The pertinent portions are excerpted below.

> [Detective]: Why don't you start from the beginning and tell me what happened?

Kysar: What can you do for me?

[Detective]: Well, it depends on what you tell me. You know, like I say, it's always best to cooperate and tell the truth. And the judge looks at that and the prosecutor looks at that and say, hey, you know, this guy's got a good attitude. He might be worth rehabilitating. A guy that sits back and says "up yours" and "screw you guys" and "I don't want to talk to you or nothin'" you know, they figure, hey, this guy's a lost cause, you know. So you kind of see where we're at and where the judge is at, so he can ...

Kysar: *Will I be out of jail by the time my baby is born?*

[Detective]: *When will your baby be born?*

Kysar: *Well, you know, say, five months.*

[Detective]: *Five months? I'd say that's a pretty safe bet.* Like I say, what they do is tomorrow morning there'd be an arraignment, okay? They would set a bond. Depending on how the case would go, if you were to come out and admit to it and plead guilty what they would do is do a background investigation on you.

. . . .

Kysar: I'm a good guy, you know, that's just the problem.

[Detective]: Yeah, I think you have a good attitude. I don't think you're a lost cause or anything like that. I think you're just under some stress, like you say, and just pushed into doing something, you know.

Kysar: (Inaudible.)

[Detective]: *When I talk to the prosecutor, I'll tell him that you're totally cooperative with me and didn't give us a bad time about it or nothing, he just wanted to come clean and clear it all up. And when it comes around to the sentencing and stuff that'll make a big difference I'm sure.* So let's go ahead and we'll have you do a real quick written statement, basically where you planned to go over and did the so-called surveillance on the business. [Emphasis added.]

As the emphasized portions indicate, the detective represented that Kysar probably would be out of custody in time to see his child born and that the detective would inform the prosecutor of Kysar's cooperation.

In his ruling on the motion to suppress, the trial judge focused solely upon the second assertion. He concluded that it was impermissible "[t]o assure a suspect that the prosecutor will be informed of his [the defendant's] cooperative nature...." With this conclusion we cannot agree. A mere representation of intent to inform a prosecutor of the defendant's cooperation, when not connected to any promise of a specific benefit, is not an implied promise of leniency requiring suppression of an inculpatory statement. *See, e.g., United States v. Curtis,* 562 F.2d 1153 (9th Cir. 1977). However, such a representation is one significant factor to be considered in analyzing the totality of circumstances. *See* RINGEL § 25.2(c).

■ The other emphasized portion of the conversation, where the detective said it would be a "safe bet" that Kysar would be out of jail in time to see his baby born—is more problematic. Although the detective's statement could be rationalized on the technical ground that Kysar might have received a pretrial release on bond within the time indicated, we do not view voluntariness through a filter of technicality. We focus on the meaning that reasonably would be ascribed by a lay person to the words spoken. So understood, we think the detective's statement amounted to an implied promise that if Kysar cooperated, his incarceration for the offense would be completed before the child was born. Furthermore, regardless of which interpretation were adopted, the detective making the assurance did not have the authority to fulfill it—and Kysar was not apprised of that fact.

Based upon our independent review of the totality of the circumstances surrounding the confession, we conclude that the detective's representations, taken together, were sufficient to undermine Kysar's free will. Therefore, his confession was not voluntary. It correctly was suppressed.

The order of the district court is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.