767 P.2d 837

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John L. DAVIS, Defendant–Appellant.**

**No. 17063.**

Court of Appeals of Idaho.

Jan. 27, 1989.

William V. Brown, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

John Davis pled guilty in the district court for Kootenai County to five counts of robbery, one count of attempted robbery and one count of burglary in the first degree. Pursuant to I.C.R. 11(a)(2), Davis reserved the right to appeal and challenge the district court's order denying his motion to suppress a confession in which he

admitted to one of these crimes. On appeal, Davis contends that he was coerced into making the confession. Davis also submits that the confession should be suppressed because he was not given timely *Miranda* warnings. We reverse the district court's order, and we remand the case with direction that Davis be allowed to withdraw his guilty pleas.

The background facts of this case are as follows. In June, 1985, Davis was detained in the Kootenai County jail for alleged parole violations. During his confinement, Davis agreed to talk to Lt. Charles Bergh of the Coeur d'Alene Police Department regarding a series of unsolved robberies and burglaries which had occurred in the Coeur d'Alene area. Davis was granted transactional immunity in return for providing information concerning the crimes. At the time of the questioning, Davis was told that his immunity was valid only if he was truthful about his own involvement in the incidents. Davis eventually confessed to participating in all of the wrongdoings except the robbery of a General Telephone (GTE) employee earlier that year. Based on Davis's information, two of his accomplices—Tom Brown and Dennis Daniel— subsequently were convicted of the various crimes.[1] However, Brown and Daniel later implicated both Davis and Davis's mother, Shirley, in the GTE robbery.[2]

The next year, in June, 1986, Davis was again in the Kootenai County jail, as a state prisoner awaiting release on parole from the Idaho State Penitentiary. Early on the morning of the day before Davis was to be released, Lt. Bergh questioned Davis once more about the GTE robbery. Davis denied any involvement. Lt. Bergh then informed Davis that charges were being filed against Shirley Davis for the GTE robbery. However, Davis refused to talk further with Lt. Bergh. The interrogation ended and Davis was returned to his cell.

Later that same day, Davis learned from another inmate that his mother had been booked into the jail. Davis's request to speak with his mother was denied. That evening, Davis asked to speak with a particular deputy prosecuting attorney with whom Davis was acquainted. The deputy prosecutor and Lt. Bergh then met with Davis at the jail. During the meeting, the deputy prosecutor told Davis that both Davis and his mother were being detained because of Davis's failure to disclose his involvement in the GTE robbery. When Davis expressed doubt as to whether there was sufficient evidence to convict him of the robbery, the deputy prosecutor told Davis that the testimony of Davis's former accomplice, Daniel, and the corroborating testimony of Brown would be sufficient to convict him of the GTE robbery.

At this point, Davis became very upset, cried, and said he could not go back to prison. Davis subsequently confessed to being a perpetrator in the GTE robbery. As a result, Davis was charged with the GTE robbery and he was also charged with the robberies and burglary to which he had confessed the previous year.[3] Shortly after Davis gave his confession, Shirley Davis was released on her own recognizance. The charges against her were later dismissed, during a preliminary hearing, for lack of evidence.

On appeal we are asked to determine whether Davis's confession was voluntarily made or whether it was the product of

1. Neither Daniel nor Brown was implicated in every crime specified by Davis; Davis committed some of the offenses with Daniel and some with Brown. Thus, Brown was convicted of some of the crimes while Daniel was convicted of others.

2. In November, 1985, Daniel told the police of the Davises' alleged involvement in the GTE robbery. The record does not reflect when Brown told police the Davises were involved, but it is assumed that he did so approximately during the same time period.

3. Davis was charged with these crimes because the prosecutor concluded that Davis lost his transactional immunity by lying about his involvement in the GTE robbery. This conclusion was based in large part upon the confession which Davis sought to suppress. When Davis entered pleas of guilty to all of the charges, he conditioned all pleas on the right to appellate review of the suppression issue. He tendered his pleas on the condition that if he prevailed on appeal, he should be allowed to withdraw his pleas. The prosecutor had no objection to this course of action.

police coercion. Generally, the voluntariness of a confession is governed by the constitutional protections of the Fifth and Fourteenth Amendments. *State v. Hiassen,* 110 Idaho 608, 716 P.2d 1380 (Ct.App. 1986). To pass constitutional muster, voluntariness must be shown based upon the totality of circumstances surrounding the police effort to obtain a statement. *State v. Kysar,* 114 Idaho 457, 757 P.2d 720 (Ct. App.1988). Under this standard, a confession is voluntary only if it is a product of the defendant's free will; confessions which are the product of physical intimidation or psychological pressure must be suppressed. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *State v. Powers,* 96 Idaho 833, 537 P.2d 1369 (1975), *cert. denied, Powers v. Idaho,* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). However, not every factor affecting a defendant's decision to confess enters into this analysis. In determining whether a statement is voluntarily made, we will assess only police conduct *causally related* to the defendant's confession. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1987). Our task upon review is two-fold: first, we defer to the lower court's findings of fact, unless they are clearly erroneous; second, we exercise free review over the question of whether the facts as found are constitutionally sufficient to show voluntariness. *State v. Kysar, supra.* In the present case, there is no dispute over the facts surrounding Davis's confession. Therefore, we will determine whether the confession was voluntary as a matter of law. *Id.*

Based upon our independent review of the record, we conclude that the timing and sequence of events surrounding Shirley Davis's incarceration exerted a psychological influence on Davis sufficient to impede his ability to render a voluntary confession. The facts show that on the date of his interrogation in June, 1986, Davis was scheduled for release from prison the very next day. During his initial interrogation, Davis was not informed that his mother had also been charged with the GTE robbery until after he had denied his involvement in the crime. Coincidentally, Shirley Davis's arrest was postponed until after her son's initial interrogation, even though the police were aware of her alleged part in the crime since November, 1985. During their confinement, Davis and his mother were permitted to visit together only once, and only because of a chance meeting while Davis was being moved to another location within the jail. Furthermore, one of Davis's primary concerns during his second interrogation was the welfare of his mother. However, Davis was given no details of his mother's situation, only that separate charges had been filed against her. During this interrogation, the deputy prosecutor expressed his belief to Davis that the reason Davis had not confessed to his involvement in the GTE robbery was to protect his mother from criminal charges. Although the deputy prosecutor was careful not to promise leniency for Shirley Davis in return for a confession, he did tell Davis that "it was time to talk," inferring that Davis had no advantage in trying to barter his statement in exchange for his mother's release. Davis finally confessed to the GTE robbery, but only after an emotional display in which he pleaded for leniency for his mother. Shortly after Davis gave his confession, the prosecutor arranged for Shirley Davis's release from jail on her own recognizance. Ironically, the charges against Shirley Davis were later dismissed during her preliminary hearing when the presiding magistrate concluded there was not sufficient evidence for probable cause to bind her over to the district court.

In reaching our conclusion, we note that Davis's confession was the direct result of the conduct both of the deputy prosecutor and of Lt. Bergh in eliciting Davis's statement. *See State v. Johns, supra.* The cumulative impact of Davis's pending release from prison, Shirley Davis's coincidental incarceration, the timing of Davis's interrogations, the subtle reference to Shirley Davis's plight during those interrogations and the fact that Shirley Davis was released shortly after her son's confession, manifest coercive—although discreet—behavior on the part of the investigating officials. We disagree with the district judge's

conclusion that, absent an improper motive by the interrogators, the confession should stand. Once coercive police conduct is established in connection with an interrogation, our focus on review is not upon the motive of the police, but upon whether the police conduct in any way deprived the defendant of his free will. *See Id.* We conclude that coercive conduct existed in this case and that, because of it, Davis's confession was not given voluntarily. We therefore hold that the confession should be suppressed as evidence of Davis's guilt.

Because we hold that Davis's involuntary confession must be suppressed, we need not address Davis's *Miranda* arguments on this appeal. The order denying Davis's motion to suppress his confession is reversed. Pursuant to I.C.R. 11(a)(2), Davis may withdraw his conditional guilty pleas to all counts. The case is remanded for further proceedings.