835 P.2d 1320

STATE of Idaho, Plaintiff–Respondent,

v.

William Mann NOBLES, III, Defendant–Appellant.

No. 18174.

Court of Appeals of Idaho.

Feb. 19, 1991.

Johnson & Meikle, Idaho Falls, for defendant-appellant. David A. Johnson, argued.

Jim Jones, Atty. Gen., Michael A. Henderson (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

William Mann Nobles III pled guilty in the district court to robbery. Pursuant to I.C.R. 11(a)(2), Nobles reserved the right to appeal and challenge the district court's order denying his motion to suppress his confession to the robbery. On appeal, Nobles contends that the confession should have been suppressed because he was not given timely *Miranda* warnings. Nobles also submits that he was coerced into making the confession. For the reasons explained below, we affirm.

The background facts are as follows. In December, 1988, Buck's convenience store, located in Idaho Falls, was robbed. Detective Del Stech, working for the Idaho Falls police department, received a tip that Nobles was the robber, and contacted Nobles's parole officer, Russ DeLuca. Officer DeLuca previously had attempted, without success, to locate Nobles to discuss Nobles's failure to obtain employment and to report as required by the terms of his parole. He and Detective Stech jointly sought to apprehend Nobles. When they located Nobles at his mother's house, they handcuffed him and transported him to the police station for questioning. At the police station, both the parole officer and the detective separately interviewed Nobles. Nobles made inculpatory statements to each of the officers, and wrote out a confession in which he described his partic-

ipation in the robbery. The state subsequently charged Nobles with the robbery. Nobles moved to suppress his confession, asserting that it was made in violation of the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and also that it was involuntary.

The district court conducted an evidentiary hearing before ruling on the motion. The court heard testimony from Officer DeLuca, from Detective Stech, and from Nobles concerning the circumstances surrounding Nobles's interrogation. The testimony was sharply disputed. Nobles claimed that while being detained at the police station, he was never informed of his rights, but that Officer DeLuca shoved some papers in front of him and told him to sign them without reading them. He also stated that DeLuca provided him with the details of the robbery and promised that if Nobles "cooperated" with the police, he would try to get Nobles placed back on parole. Nobles further testified that DeLuca threatened "to get him" for violating his parole conditions if Nobles refused to cooperate. Nobles maintained that he repeatedly denied having any knowledge of or involvement with the robbery, but that he ultimately "made the statements they wanted to hear" out of fear of having his parole revoked and being sent back to the penitentiary.

Officer DeLuca, who interviewed Nobles initially, concededly omitted giving Nobles his *Miranda* warnings prior to, or at any time during, his conversation with Nobles. However, he denied Nobles's accusations of promises and threats. Detective Stech, who subsequently interrogated Nobles, testified that he verbally read Nobles his *Miranda* rights at the outset of their discussion, and that Nobles then signed a Rights and Waiver Form prior to any questioning. At the conclusion of the interrogation, Nobles wrote out a statement confessing to the robbery.

Ruling from the bench, the district court concluded that Officer DeLuca's testimony would be suppressed, but that Nobles's confession would be admissible through the testimony of Detective Stech. No written

findings were requested by either party, and none were issued by the court. Nobles challenges the district court's denial of his motion, arguing that the police detective's testimony also should have been suppressed. He maintains that his confession to Detective Stech should have been excluded as "fruit of the poisonous tree" because it followed his illegally obtained statements to another police agent, DeLuca. He also asserts that, under the totality of the circumstances, his statements admitting to the robbery were involuntarily made and therefore were inadmissible.

## I

We first address Nobles's exclusionary rule argument. At the evidentiary hearing, Officer DeLuca explained that he believed he was not required to advise a parolee of his rights when questioning was related to a parole violation. However, it is undisputed that Nobles was "in custody," and we therefore must assume that the officer breached *Miranda* procedures by failing to administer *Miranda* warnings before initiating the discussion. *See Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). Unwarned inculpatory statements obtained while in police custody are presumed to be compelled, and thus are required to be excluded from evidence at trial in the state's case in chief. *Miranda*, 384 U.S. at 476, 479, 86 S.Ct. at 1628, 1630; *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630–31, 81 L.Ed.2d 550 (1984); *Oregon v. Elstad*, 470 U.S. 298, 307, 317, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985). Accordingly, the trial court properly suppressed Nobles's statements to Officer DeLuca.

Nobles contends that his subsequent confession to the detective was "fruit" of the previous illegally obtained confession, and therefore should have been suppressed. However, we note that the exclusionary rule is inapplicable where a defendant gives an uncoerced statement without receiving his *Miranda* warnings, and thereafter confesses following proper warnings. *Oregon v. Elstad, supra. See also State v. Windsor*, 110 Idaho 410, 716

P.2d 1182 (1985). In *Elstad*, the United States Supreme Court explained that,

> absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a *voluntary but unwarned* statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314, 105 S.Ct. at 1296 (emphasis added). When neither the initial nor the subsequent admission is coerced, exclusion rarely is justified. *Elstad*, 470 U.S. at 312, 105 S.Ct. at 1294–95. Accordingly, we reject Nobles's argument that the failure to administer *Miranda* warnings prior to his first inculpatory statement is fatal to the admission into evidence of any subsequent statement made after proper warnings have been given. Thus, in reviewing the district court's decision that the subsequent confession to Detective Stech was admissible, our first inquiry is whether Nobles's initial unwarned statement was, in fact, voluntary. We next determine whether Nobles's subsequent statement was given pursuant to a knowing and voluntary waiver of his *Miranda* rights.

## II

We turn then to Nobles's contention that his confession to his parole officer was involuntary. The question before us is governed by the constitutional standard of voluntariness under the Fifth and Fourteenth Amendments. *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *State v. Kysar*, 114 Idaho 457, 458, 757 P.2d 720, 721 (Ct.App.1988). Whether a defendant acted voluntarily in choosing to make an inculpatory statement, although essentially a factual question, is determined in the first instance by the trial court. *State v. Blevins*, 108 Idaho 239,

243, 697 P.2d 1253, 1257 (Ct.App.1985); *State v. Dillon,* 93 Idaho 698, 471 P.2d 553 (1970), *cert. denied,* 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971). Voluntariness of a confession is determined by the totality of the circumstances surrounding the police effort to obtain a statement. *State v. Powers,* 96 Idaho 833, 840, 537 P.2d 1369, 1376 (1975), *cert. denied,* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). A statement is "voluntary" if it is deemed to be the product of the defendant's free will. *Id.* Under this standard, it must be established that the statement was not extracted "by any sort of threats or violence, nor obtained by any direct or implied promises." *Bram,* 168 U.S. at 542–43, 18 S.Ct. at 187; *Kysar* at 458, 757 P.2d at 721. *See also State v. Davis,* 115 Idaho 462, 767 P.2d 837 (Ct.App.1989).

■ When reviewing a trial court's ruling that the defendant's custodial statements to police agents were voluntarily given, we defer to the lower court's findings of fact, if they are not clearly erroneous; we then exercise free review over the question of whether the facts found are constitutionally sufficient to show voluntariness. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Kysar* at 458, 757 P.2d at 721. In a suppression hearing, the authority to evaluate the credibility of the witnesses, to resolve any conflicts in the testimony, to weigh the evidence and to draw factual inferences, rests uniquely with the trial court. *State v. Kirkwood,* 111 Idaho 623, 625, 726 P.2d 735, 737 (1986). The appellate court views all presumptions in favor of the trial court's exercise of that authority, and the trial court's findings on such matters, *whether express or implied,* will be upheld if they are supported by substantial evidence. *Id.,* at 625, 726 P.2d at 737.

■ Nobles avers that Officer DeLuca employed coercive questioning—promising parole if Nobles confessed and threatening incarceration if he refused—and that such tactics precipitated his subsequent verbal and written admissions to Detective Stech. We observe that the trial court made no express findings with respect to the volun-

tariness of Nobles's statement to Officer DeLuca. The court ultimately concluded, however, that "under the totality of the circumstances" the confession given to Detective Stech was admissible. Because the trial court was not required to render explicit findings of fact as to the voluntariness of the defendant's confession, where none were requested, we must identify and review its implicit findings. I.C.R. 12(e); *Kirkwood,* at 627, 726 P.2d at 739; *cf. State v. Culbertson,* 105 Idaho 128, 131–32, 666 P.2d 1139, 1142–43 (1983) (Bistline, J., dissenting).

■ In arriving at its determination that Nobles's confession to Detective Stech was admissible, the trial court necessarily, and thus implicitly, found that both Nobles's initial and subsequent confessions were voluntarily given. *Elstad, supra; Kirkwood,* at 627, 726 P.2d at 739. Also implicit in the trial court's ruling are the necessary factual determinations that Nobles was given his *Miranda* rights prior to confessing to the police detective, and that Nobles made a knowing, intelligent and voluntary waiver of those rights in choosing to confess. Thus, we examine the record to determine whether these implicit findings are supported by substantial evidence.

In contrast to Nobles's account of the facts, Officer DeLuca refuted Nobles's accusations of police coercion. He indicated that prior to discussing the robbery with Nobles, he had informed Nobles that he would be immediately incarcerated as a result of his parole violations. Officer DeLuca also testified that he gave no description of the robbery to Nobles except to identify that it had occurred at Buck's. He then questioned Nobles about the robbery, and when Nobles admitted his role in it, he told Nobles that there likely would be charges filed against him, and that "it would be in his best interest to be truthful." He described Nobles as not particularly distraught, but that Nobles indicated he wanted to be truthful and to "clear the matter up."

Upon this record, we conclude that there exists substantial evidence, albeit conflict-

ing, to support the trial court's implicit finding that Nobles's initial unwarned confession to his parole officer was voluntary. Neither the environment nor the manner of the interrogation was coercive. We are mindful that the questioning took place at the police station. However, we decline to find that such a setting, without more, was inherently "coercive." The questioning occurred between Nobles and his parole officer, an individual Nobles spoke with on a first-name basis, and with whom Nobles had become quite familiar during the period of his parole. In view of this otherwise familiar setting, we conclude that the fact that this conversation took place at the police station rather than at Officer DeLuca's office, without more, is insufficient to render the interrogation environment inherently "coercive" for purposes of establishing a Fifth Amendment violation. Based on our review, we conclude that the totality of the circumstances surrounding the confession is constitutionally sufficient to establish that the initial confession, although unwarned, was voluntarily given.

■ Nor is there any evidence to suggest that the officers exploited the unwarned admission to pressure Nobles into waiving his right to remain silent in confessing to Detective Stech. To the contrary, Officer DeLuca testified that when he had finished talking to Nobles, he left the room and told Detective Stech that Nobles would speak to him. Officer DeLuca and Detective Stech each testified that nothing else was communicated between them concerning DeLuca's interview with Nobles or the fact that Nobles had admitted to the crime.

Detective Stech testified that upon entering the interview room where Nobles was waiting, he verbally recited Nobles's *Miranda* rights and then handed him a written form containing those rights. He also testified that Nobles signed the form and agreed to talk. The form, identified by the detective and made part of the record, contains Nobles's signature and also was signed by Stech as a witness. At the conclusion of the interview, Nobles wrote a statement detailing the events of the robbery and confessing to committing it.

Although not conclusive, an express written statement waiving *Miranda* rights is usually strong proof of voluntary waiver, as is the fact that the defendant chooses to speak after being informed of his rights. *Elstad,* 470 U.S. at 318, 105 S.Ct. at 1297–98; *State v. Padilla,* 101 Idaho 713, 719, 620 P.2d 286, 292 (1980). The standard *Miranda* warnings given Nobles explicitly informed him of his privilege to remain silent, of his right to consult an attorney before speaking, and that his statements could be used against him in a court of law. We hold that the evidence presented to the trial court was sufficient to establish that Nobles was advised of his *Miranda* rights, and that he knowingly and voluntarily waived those rights before giving his statement to the police detective.

Accordingly, we uphold the district court's decision denying Nobles's motion to suppress evidence. The judgment of conviction is therefore affirmed.

SILAK, J., concurs.

SWANSTROM, Judge, dissenting:

I cannot concur in the majority opinion upholding the order denying Nobles' motion to suppress for the following reasons.

First, *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), which the state urges supports the district court's decision, was not—so far as I can tell from the record—ever argued to the district court. As a result, the factors important to the *Elstad* decision were never addressed by the district court.

Second, *Elstad* requires findings by the trial court that both the first "unMirandized" statement of defendant, as well as the subsequent, separate "Mirandized" statement are voluntary. Here, the district court made no such discrete findings. The court orally stated only that:

> Considering the totality of the circumstances the situation does not warrant suppression of evidence given to Detective Stech. There's a different status for a probation officer ... but I'm not going

to allow the confession to come in through Officer DeLuca. I don't believe that there was [an] appropriate basis for that, but I will allow the written confession as well as the oral confession to come in through the Detective.

Accordingly, I can agree with the majority that the judge's oral decision contains an implicit finding that the statement given to Detective Stech was voluntary, but I cannot discern any such implicit finding in regard to the statement obtained by Parole Officer DeLuca.

Third, I question whether *Elstad* should be applied at all to the facts of this case. As noted earlier, *Elstad* applies where there are two *separate* statements, both voluntary, but the first is inadmissible because of a *Miranda* violation. Our Supreme Court recognized and followed *Elstad* in *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985). There, the Court noted that while Windsor was under arrest, she had been questioned briefly about the location of the victim's car, but without the benefit of the *Miranda* warnings. In upholding a later confession made to other officers after the *Miranda* warnings were given, the Court noted that this "confession was not taken until more than an hour later." 110 Idaho at 415, 716 P.2d at 1187. Moreover, the Court said, "The confession which followed was not connected in any way to the initial questioning as to the location of the car." *Id.*

The reality of the present case is that there were not two separate confessions. Perhaps the district judge recognized this when he said, "but I'm not going to allow *the* confession to come in through Officer DeLuca." (Emphasis added.)

The parole officer and the police detective acted jointly in obtaining Nobles' confession to the robbery. While questioning Nobles about his activities relating to parole conditions, Officer DeLuca asked him directly whether he had committed the "Buck" robbery. At first, Nobles denied that he had. Later, after further questioning by DeLuca, Nobles admitted a role in the robbery and DeLuca asked for the facts of the robbery.

Apparently, DeLuca was versed in some details about the robbery investigation *before* he talked to Nobles, because at the suppression hearing he testified that he had made the following statements to Nobles:

I did state that the owner—you know, I said, "It appears that it would be in your best interest to tell the truth here to me, Bill, because it appears that the owner is not cooperating fully." And I said, "It appears that there was not a weapon used, and so we're not talking about an armed robbery." I just said, "It would appear that it would be in your best interest to tell the truth."

It also appears that DeLuca was aware that, since he had not Mirandized Nobles, he would not be able to testify at a trial in the robbery case about any admissions Nobles had made concerning the robbery. *See Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). This awareness is important in view of DeLuca's final message to Nobles as the interview came to an end.

I told Mr. Nobles that he had violated his parole by committing this robbery, and that there was a good chance that new charges, you know, may be filed against him. I told him that it would probably be in his best interest to be truthful about that, and Mr. Nobles stated that he wanted to be, that he wanted to clear this matter up.

I then left the room and went to Mr. Stech's office and told him that Mr. Nobles would like to speak with him.

After that lead-in, all that Detective Stech had to do was to have Nobles sign the *Miranda* notification and waiver form and write out his confession. However fairly the two officers conducted their sessions with Nobles, if we permit this practice to continue under a broad reading of *Elstad*, we will be inviting abuses of fundamental rights.