812 P.2d 744

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael Dale SPRADLIN, Defendant–Appellant.**

**No. 18402.**

Court of Appeals of Idaho.

June 4, 1991.

Alan E. Trimming, Ada County Public Defender and August H. Cahill, Jr., Chief Deputy Public Defender, argued, Boise, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen. and Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Michael Dale Spradlin was found guilty by a jury of robbery, rape and second degree kidnapping. For the robbery and rape offenses he received life sentences, each with a minimum period of thirty years' incarceration, and he received a twenty-five year sentence, with a fixed period of twenty-four years, for the kidnapping conviction. The court ordered that the sentences be served concurrently. On appeal, Spradlin contends he was denied his constitutional right to counsel as a result of the trial court's refusal to continue the trial date. He also argues that his pretrial statements to police were inadmissible and should have been suppressed. Finally, he maintains that the trial court abused its discretion by imposing excessive sentences. We affirm.

## FACTS

On the morning of April 21, 1989, at approximately 8:00 a.m., Spradlin entered a beauty salon in Boise, Idaho, and asked to have his hair cut. There was one hairdresser on duty at that hour, and she asked Spradlin to be seated while she finished attending to the only other customer in the shop at the time. Spradlin then grabbed the hairdresser from behind, put a knife to her throat and announced, "This is a robbery." At Spradlin's command, she gave him the salon's bank bags, containing approximately $350 in cash and checks. He then bound the hairdresser and the customer with duct tape, placing the customer in the bathroom. He proceeded to remove the hairdresser's pants, performed oral sex on her and raped her.

During these events the salon owner arrived, entering through the back door. Spradlin brandished the knife and directed her into the bathroom with the salon customer. At some point, Spradlin carried a laundry basket and a television set from the salon to his car, which was parked in back of the building. As he departed the building, another salon employee arrived. The salon owner called to her from the bathroom to run and call the police. As the employee fled she turned back toward the salon and observed Spradlin with a knife standing next to his car. Spradlin threatened the employee and then drove off.

Boise police officers soon arrived, began their investigation and quickly focused on Spradlin as a suspect. Early that afternoon they apprehended Spradlin and placed him in the back seat of a police vehicle with Boise City Police Detective David Smith. Detective Smith orally informed Spradlin of his *Miranda* rights and began to question him concerning the crimes. Spradlin initially denied any involvement in the incident, claiming that he did not know what the detective was talking about. However, as Detective Smith confronted him with the evidence, Spradlin admitted committing the acts at the salon and additionally revealed that he had left the laundry basket, towels and television set at his brother's house and had placed some of the salon's money in a friend's car. Police later found those items in the locations disclosed by Spradlin.

Police then transported Spradlin to the detective bureau at the local law enforcement building where Spradlin again was administered his *Miranda* rights. He signed a written form acknowledging waiver of his rights and then gave a detailed confession which was recorded on audio tape. Upon this information, Spradlin was charged with the robbery of the salon, the rape of the hairdresser, and the second degree kidnapping of the salon customer.

## PROCEDURAL BACKGROUND

On April 28, 1989, Spradlin entered a plea of not guilty and a jury trial was set for August 28, 1989. No pretrial motions were filed until August 4, 1989, when Spradlin's attorney, questioning Spradlin's competency to stand trial, requested the court to order a mental evaluation of his client. He also asked the court to vacate

the August 28 trial date, stating that additional time was necessary to obtain information concerning the psychological history of his client. The attorney explained to the court that, although he had attempted to acquire information in connection with Spradlin's previous criminal record in Alaska, the responding officials in that state were unwilling to disclose the information requested. The court denied the motion for a continuance but ordered that Spradlin be evaluated by the Idaho Department of Health and Welfare and that the examination report be made by August 11, 1989. The order also mentioned that disclosure sought by the defense could be compelled through Spradlin's written release accompanied by an additional order from the court. On August 9, 1989, Spradlin moved to suppress evidence of his incriminating statements made to police on the basis that, at the time of the confessions, he was incompetent to make a voluntary and knowing waiver of his constitutional rights to remain silent and to an attorney.

On August 14, the court-ordered psychological report was filed. The report concluded that Spradlin possessed the capacity to form *mens rea* or the particular state of mind requisite as an element of the offenses with which he was charged. The report further stated that Spradlin sufficiently understood the proceedings against him, and that he could assist in his defense. Spradlin registered no objection to these conclusions.

On the morning of trial, August 28th, Spradlin's attorney again requested that the court vacate the trial and grant a continuance. He explained that mental health workers had refused to furnish the information requested in the absence of a court order, which the defense apparently had not attempted to procure. At that point, the prosecutor handed Spradlin's counsel copies of reports on Spradlin's psychological history—documents which the state asserted it had received only that morning. After the brief review of the materials permitted by the court, Spradlin's attorney renewed his motion. Conceding that nothing on the face of the reports revealed anything significant to his client's defense,

Spradlin's attorney asked the court to continue the trial for two weeks to allow him to develop the newly provided information by interviewing the persons making the reports. The trial court denied the motion to continue. The next day the court conducted an evidentiary hearing on Spradlin's motion to suppress and ruled to admit the confessions. At the conclusion of trial, the jury returned a verdict finding Spradlin guilty of all three of the charged offenses. The court imposed concurrent life sentences, each including a thirty-year minimum term of incarceration, for the robbery and rape convictions. For the kidnapping conviction, the court sentenced Spradlin to a concurrent twenty-five years with a fixed minimum term of twenty-four years.

On appeal, Spradlin maintains that the trial court's refusal to grant his second request for a continuance denied him his constitutional right to counsel. He further claims that his pretrial confessions were inadmissible because he was incompetent to waive his *Miranda* rights, and because the confessions were coerced. Spradlin also challenges his sentences, asserting that they were excessive in light of relevant mitigating circumstances.

## MOTION TO CONTINUE

■ We first address Spradlin's contention that the trial court committed reversible error in refusing to grant the request for a continuance. The decision whether to grant a continuance rests within the discretion of the trial judge. *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977). To warrant reversal, the defendant must show prejudice from the denial of the request for a continuance. *United States v. Pope,* 841 F.2d 954, 957 (9th Cir.1988). Spradlin contends that the denial of the motion to continue the trial to allow his attorney to evaluate and investigate the psychological reports, which were handed him on the day of trial, effectively denied him his constitutional right to counsel.

■ The appellate courts have held that where *the appointment of counsel* is so untimely as to deprive the attorney of any

realistic opportunity to assist the client, and the trial court declines to allow a reasonable period of time for consultation and preparation of the case, reversible error has been committed. *In re Kinley,* 108 Idaho 862, 702 P.2d 900 (Ct.App.1985). *See also State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977); *State v. Carman,* 114 Idaho 791, 760 P.2d 1207 (Ct.App.1988), *aff'd,* 116 Idaho 190, 774 P.2d 900 (1989). However, that rule is inapposite to the case at hand. Here, Spradlin's attorney *was* timely appointed, only days after the indictment was returned. Moreover, the same attorney represented Spradlin throughout the entirety of the criminal proceedings. Thus, we cannot agree with Spradlin that his claim frames an issue of counsel denied. Rather, Spradlin's argument raises questions concerning ineffective assistance of duly appointed counsel, or of the violation of his due process right to a fair trial. *See State v. Banks,* 113 Idaho 54, 740 P.2d 1039 (Ct.App.1987); *Sivak v. Ada County,* 118 Idaho 193, 795 P.2d 898 (Ct.App.1990). Ineffective assistance claims generally are not amenable to review on direct appeal. *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). A challenge by way of application for post-conviction relief is preferable as it permits the defendant to develop a record concerning what counsel did or omitted, why it was done or omitted, and what, if any, prejudice resulted. *See State v. Koch,* 116 Idaho 571, 777 P.2d 1244 (Ct.App.1989); *State v. Rendon,* 107 Idaho 425, 690 P.2d 360 (Ct.App.1984). Because the record on the appeal in this case is insufficient to support a reviewable claim of ineffective assistance of counsel, we decline to reach any decision with regard to that claim. *See State v. Darbin,* 109 Idaho 516, 708 P.2d 921 (Ct.App.1985). ██ We thus examine only whether the court's refusal to continue the trial abridged Spradlin's right to due process. Where the denial of a motion to continue is attacked on the basis of late disclosure or

discovery of evidence, the alleged tardiness of the disclosure must be shown to so prejudice the defendant's preparation of his case that a fair trial was denied. *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Hiassen,* 110 Idaho 608, 716 P.2d 1380 (Ct.App. 1986). To prove prejudice, a defendant must show there is a reasonable probability that, but for the late disclosure or discovery of evidence, the result of the proceedings would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Parrott v. State,* 117 Idaho 272, 274–75, 787 P.2d 258, 260–61 (1990).

██ Spradlin has directed this Court's attention to nothing in any of the reports or elsewhere in the record which suggests that the result at trial might have been different had counsel been granted the continuance. The bare claim that additional investigation could have been conducted is not sufficient to demonstrate unfair prejudice so as to support a motion for a continuance. *State v. Banks,* 113 Idaho 54, 740 P.2d 1039 (Ct.App.1987). Thus, Spradlin's assertion that further investigation might possibly have altered the theory of his defense is insufficient to show prejudice. *See State v. Lopez,* 107 Idaho 826, 693 P.2d 472 (Ct.App.1984). Spradlin has failed to make a prima facie showing that the trial court's refusal to grant a continuance prejudiced his defense. We therefore conclude that the trial court did not commit reversible error by denying the motion for a continuance.

### ADMISSIBILITY OF SPRADLIN'S CONFESSION

We turn next to Spradlin's contention that his pretrial statements to police officers were admitted in violation of his constitutional privilege against self-incrimination and his correlating right to counsel. Although Spradlin agreed to speak with police after receiving his *Miranda* warnings, he claims that he lacked sufficient capacity to effectively waive those rights.

Spradlin also argues that his statements were the product of police coercion and were inadmissible on that basis also.

In order to introduce statements made by a suspect during a custodial interrogation and outside the presence of an attorney, the state must establish a voluntary, knowing and intelligent waiver of the suspect's rights. *State v. Mitchell*, 104 Idaho 493, 497, 660 P.2d 1336, 1339, *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). Whether a confession is voluntary as required under the constitution is determined by examining the totality of the circumstances surrounding the police effort to obtain the statement. *Id.* A statement is voluntary if it is deemed to be the product of the defendant's free will. *Id.* Whether a defendant acted voluntarily in choosing to make a pretrial statement, although essentially a factual question, is determined in the first instance by the trial court. *State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970), *cert. denied*, 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971); *State v. Blevins*, 108 Idaho 239, 243, 697 P.2d 1253, 1257 (Ct.App.1985).

In a suppression hearing, the authority to evaluate the credibility of the witnesses, to resolve any conflicts in the testimony, to weigh the evidence and to draw factual inferences, rests uniquely with the trial court. *State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986). Our Supreme Court has expressed the view that all presumptions favor the trial court's exercise of that authority, and the trial court's findings on such matters, whether express or implied, will be upheld if they are supported by substantial evidence. *Kirkwood*, 111 Idaho at 625, 726 P.2d at 737; *see also State v. Moulds*, 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983). The appellate court then exercises free review over the question of whether the facts found are constitutionally sufficient to show voluntariness. *State v. Kysar*, 114 Idaho 457, 757 P.2d 720 (Ct.App.1988).

The standard *Miranda* warnings given Spradlin expressly contained the privilege to remain silent and the right to consult an attorney before speaking. Spradlin maintains, however, that he lacked the capacity to comprehend and effectively waive these rights. He claims that he was under the influence of some substance at the time of questioning, and that this condition, together with the existence of his other mental problems, impaired his ability to make a voluntary, rational decision to speak to the police. Although intoxication or the influence of drugs bears on the question of whether a waiver is valid, the existence of such condition does not necessarily signify that a waiver is invalid. *See State v. Alger*, 115 Idaho 42, 46, 764 P.2d 119 (Ct. App.1988); *State v. Hall*, 111 Idaho 827, 727 P.2d 1255 (Ct.App.1986).

At the suppression hearing, Spradlin submitted a cursory affidavit stating that, at the time of his arrest and subsequent questioning, he was "under the influence and not thinking clearly." Aside from this short statement, however, Spradlin has presented no evidence of drug or alcohol use surrounding his statements to the police. To the contrary, Detective Smith testified that—during his interview with Spradlin—Spradlin denied he was under the influence of any drugs or other debilitating substances. The detective further testified to his own observations that Spradlin appeared lucid, rational and competent during their conversations. However, Spradlin suggests that the police should have tested him for alcohol consumption and drug use prior to the interrogation to ensure that he was making rational and intelligent choice in deciding to waive his right to remain silent. We are unpersuaded by Spradlin's argument, particularly in the absence of any evidence suggesting to police that Spradlin may have been intoxicated or under the influence of any debilitating substance.

Spradlin further contends that his history of mental problems and former diagnosed condition of a "borderline personality" tainted the voluntariness of his statements. Arguably, Spradlin's conduct and criminal history are illustrative of some type of social, if not mental, abnormality. However, there is nothing in the record to connect this behavior with any condition

rendering him incapable of exercising his free will to choose to confess his acts to police. Moreover, the court-ordered psychological report related that Spradlin was oriented as to time, person and to his situation, that he was within the average range of intelligence, and that he represented no serious psychopathology. The report concluded that Spradlin possessed the capacity to form the mental intent necessary to commit the crimes with which he was charged and that he was also mentally able to assist in his defense. We find that this evidence is sufficient to support the trial court's implicit finding that Spradlin was capable of comprehending his rights to remain silent and to consult with counsel, and of making a voluntary, knowing and intelligent waiver of those rights.

▇ Spradlin next avers that his confessions were the result of police coercion. Spradlin maintains that the duration of the interrogations, the custodial settings in which they were conducted, and the detective's refusal to accept his initial denial of the crimes combined to create a coercive setting. He also claims that the detective's tactics of confronting him with the facts of the crime and requesting that Spradlin "allay the fears of the victim" contributed to his waiver of his rights and were therefore improper. Having fully reviewed the record, we find nothing in these circumstances, individually or combined, to constitute unconstitutional coercion.

▇ Spradlin also submits that Detective Smith's discussion of an unresolved murder case and his implication that Spradlin would be investigated as a suspect were unduly coercive. We observe that under the "voluntariness" standard, the state must establish that the inculpatory statements it seeks to introduce were not extracted by any sort of threats or violence, nor obtained by any direct or implied promises. *Kysar*, 114 Idaho at 458, 757 P.2d at 721. Spradlin's argument thus may be viewed as a claim that his decision to speak was induced by the implicit threat of prosecution for an unrelated crime. In reviewing the record, however, it is clear that Spradlin's initial confession at the arrest scene preceded any mention of the unrelated murder case. Furthermore, Detective Smith's testimony at the suppression hearing unambiguously states that he discussed the murder case only after Spradlin finished making his recorded statement confessing to the instant crimes, thus belying Spradlin's claim that the detective's "threat" of an investigation contributed to the confession. *See Fetterley*, 109 Idaho at 770–71, 710 P.2d at 1206–1207. Upon the record before us, we find there was substantial evidence to support the trial court's finding that Spradlin's confession was not coerced by the police and was voluntarily made. Accordingly, we conclude that the district court did not err in denying Spradlin's motion to suppress.

## SPRADLIN'S SENTENCES

▇ Finally, Spradlin argues that his sentences were excessive. Spradlin's sentences do not exceed the statutory maximum and thus will not be disturbed unless an abuse of sentencing discretion is shown. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (Ct.App.1989). A sentence may represent such an abuse if it shown to be unreasonable under the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

In reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App. 1989). Thus, we will treat Spradlin's actual term of confinement as thirty years. In order to prevail on appeal, Spradlin must establish that, under any reasonable view of the facts, a period of confinement of thirty years for his convictions for robbery,

rape and second degree kidnapping was an abuse of discretion.

 When weighing the facts of a given case, we conduct an independent examination of the record. We focus upon the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). The seriousness of Spradlin's crimes is evident. He raped a woman and robbed a beauty salon. Afterward, with a knife to her throat Spradlin told the victim, "I know who you are and you're the one I'll come back for. If anybody finds out about this, you're the one I'll get." He also detained two other women at knife point and threatened to kill a fourth victim. The record further contains statements from these victims describing the trauma and impact they sustained as a result of Spradlin's violent conduct.

Concerning Spradlin's character, we observe that in 1979 he robbed a beauty shop in Anchorage, Alaska, and raped a woman he found there. Nineteen days later, he robbed another beauty shop in Anchorage. Ironically, the woman Spradlin had raped earlier was in the shop at the time. Spradlin attempted to kidnap her. When she resisted, he struck her in the head with the butt of a pistol. Spradlin was later apprehended and convicted of rape and the two robberies and was sentenced to concurrent terms of confinement with a fifteen-year maximum. He was paroled in August of 1987; within two years he committed the instant offenses in Idaho.

Spradlin contends that his concurrent life sentences with a fixed period of thirty years are longer than necessary to achieve the sentencing objectives. He points to an unfortunate childhood in which he was sexually brutalized, and to the social, educational and intellectual deprivation he has suffered as a result. He also refers to his mental and emotional problems, his reported progress in a recent counseling program and of his need for further counseling in order to rehabilitate himself. However, the district court had the benefit of this information, and of counsel's arguments, at the time it sentenced Spradlin. Upon the record before us, we cannot say that the sentences imposed represent an abuse of discretion.

The judgments of conviction for robbery, rape and kidnapping, including the sentences, are affirmed.

SWANSTROM and SILAK, JJ., concur.