697 P.2d 1253
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Larry Dean BLEVINS,
Defendant-Appellant.**

No. 14717.

Court of Appeals of Idaho.

March 29, 1985.

Douglas Ray Whipple, Stanley Holloway (argued), Burley, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

Upon a jury's verdict, Larry Dean Blevins was convicted of second degree murder and found to be a persistent violator of the law. On appeal he contends that incriminating statements made to the police while he was in custody should have been suppressed. He also asserts that he was denied a fair trial because an alleged accomplice testified against him under a grant of immunity from prosecution. We affirm the

judgment of conviction, with a modification concerning the persistent violator status, as explained below.

The body of an apparent homicide victim was found partially decomposed in the Snake River. The victim had last been seen in the company of appellant Blevins and an individual named Dow Jennings. Jennings contacted law enforcement authorities, requesting immunity from prosecution in return for information regarding the circumstances surrounding the victim's death. The prosecutor ultimately granted immunity. Jennings provided information resulting in Blevins' arrest and incarceration on October 9, 1980. When taken into custody Blevins was informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He received *Miranda* warnings again while being "booked" at the Cassia County jail. He told the sheriff's chief investigator, Deputy Don Taylor, that he did not want to talk about the case. No questions were asked on that day.

The next day, October 10, appellant was arraigned and an attorney was appointed for him. He also received a visit in jail from his sister and a sister-in-law. The visitors later averred, in affidavits submitted at a suppression hearing, that Deputy Taylor had urged them to talk Blevins into making a statement. The visitors further averred that they had encouraged Blevins to speak with Taylor only in the presence of an attorney and similarly had asked Taylor not to talk to Blevins without the attorney. Although Taylor disputed these latter averments, we will presume them to be true for the sake of discussion.

On the evening of October 10, according to unrebutted evidence presented at the suppression hearing, Blevins asked to speak with Deputy Taylor about the case. Taylor again informed Blevins of his *Miranda* rights. Blevins signed a written waiver and declared that he did not want his attorney present. He then made a written statement indicating that he had been present at the scene of the crime but had not committed the murder. A week later,

having consulted with his attorney during the interim, appellant made two more statements in the attorney's absence. The first was given to an investigator from the Idaho Department of Law Enforcement, who interviewed Blevins after apprising him of his *Miranda* rights. The second statement was given when Blevins, while in his cell, asked the jailer to provide some paper and a pencil. The jailer complied. Blevins wrote an incriminating statement and gave it to the jailer, who passed it on to Deputy Taylor. Finally, on October 22, the defendant contacted Taylor and said he wanted to tell the whole story. Taylor again informed appellant of his *Miranda* rights. Appellant signed a waiver and said, as Taylor later recalled, "I don't want an attorney here. I just want to get it out and in the open and on the record." In a recorded oral statement appellant then admitted participating in the murder.

The district court refused to suppress the statements given to Deputy Taylor on October 10 and 22. The court also declined to suppress the handwritten statement handed to the jailer on October 17. The court did not rule on the other statement given to the investigator on October 17. However, that statement was not later used in evidence and the investigator did not testify at trial. There is no contention that this statement affected the voluntariness of any subsequent statement. Therefore, we are not concerned with it here. However, appellant does contend that the other statements were used against him in violation of the fifth and sixth amendments to the United States Constitution. We now examine that contention.

 Our analysis begins by noting the subtle relationship between the two amendments. The fifth amendment's privilege against self-incrimination and the sixth amendment's right to counsel both apply to the states as a part of the due process guarantee of the fourteenth amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The right to counsel

under the sixth amendment extends to all critical stages of the criminal justice process "at or after the initiation of adversary judicial criminal proceedings [against the accused]." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). *See also Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Wherever the sixth amendment right applies, it may be waived only by the voluntary, knowing and intelligent choice of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ The fifth amendment is more complex. It, too, contains a right to counsel. This right serves as a protective adjunct to the right to remain silent. Both rights apply during custodial police interrogations, whenever conducted. *Miranda v. Arizona, supra.* The familiar *Miranda* doctrine is that any statement obtained during a custodial police interrogation is deemed involuntary per se unless preceded by an explanation of the accused's right to silence and right to counsel. The police must honor these rights when invoked.

■ The meaning of *Miranda* has grown during the last two decades. *See generally State v. Moulds*, 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983). In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court added another per se element to the *Miranda* doctrine. The Court held that if a person undergoing custodial interrogation invokes his right to counsel, the police must stop the questioning and they may not continue it until the individual reinitiates the dialogue or an attorney is made available. In either event, a statement made in the absence of counsel will be admissible in evidence only if it is the product of a voluntary, knowing and intelligent waiver of the previously invoked right to have counsel present.

■ A similar, but not identical consequence flows from invocation of the right to remain silent. In that event, the individ-ual's right to cut off questioning must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). However, the Court in *Mosley* did not say how long the police must wait before resuming the interrogation. The Court simply held, upon the facts presented, that where the police "resumed questioning only after the passage of a significant period of time [two hours] and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation," no fifth amendment violation occurred. 423 U.S. at 106, 96 S.Ct. at 327. Presumably, the test of a "substantial period of time" would be somewhat more rigorous if both interrogations focused upon the same crime. In any event, a statement procured in the second interrogation would be admissible in evidence if it were the product of a voluntary, knowing and intelligent waiver of the previously invoked right to silence.

■ Although at first glance it might seem anomalous that the consequences of invoking the right to counsel differ somewhat from the results of invoking the right to silence. But when we consider the practical aspects of each right, the anomaly fades. A person who invokes the right to counsel does not forever end all questioning; he simply suspends it until an attorney has been obtained. Similarly, the person who invokes the right to silence does not terminate the interrogation permanently; he suspends it for a "substantial" time. *See United States v. Bosby*, 675 F.2d 1174 (11th Cir.1982); *United States ex rel. Riley v. Franzen*, 653 F.2d 1153 (7th Cir.1981), *cert. denied*, 454 U.S. 1067, 102 S.Ct. 617, 70 L.Ed.2d 602 (1981). As noted, each of these rights can be waived, but the waiver must be voluntary, knowing and intelligent. From this perspective, *Edwards* and *Mosley* can both be viewed as logically consistent with *Miranda* and with each other. Both maintain the same high standard for a voluntary, knowing and intelligent waiver of fifth amendment rights required by *Miranda*. And both

strive to ensure that the suspect who invokes his rights will be free from coercive attempts to change his mind. The analytical frameworks vary, not because the value or importance of the rights is different, but because the realities of implementing them are not the same.

Note, *Edwards v. Arizona: The Burger Court Breathes New Life Into Miranda,* 69 CAL.L.REV. 1734, 1752 (1981).

Based on the foregoing, our task is to determine, first, whether the per se requirements imputed to the fifth amendment by *Miranda*—as elaborated in *Edwards* and *Mosley*—have been satisfied. If so, we must decide, second, whether the statements obtained from Blevins, in the absence of counsel, were voluntary, knowing and intelligent as required by both the fifth and sixth amendments.

■ The October 10 statement, it will be recalled, was given after appellant had invoked his right to silence the previous day. Blevins now argues that by urging his sister and sister-in-law to persuade him to talk on that day, Deputy Taylor indirectly reinitiated an interrogation in violation of *Edwards.* However, even accepting the premise that law enforcement officers cannot do indirectly what they are prohibited to do directly, *Nardone v. United States,* 308 U.S. 338, 340, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939), we believe this argument misses the mark. Blevins did not invoke his right to counsel under *Edwards* on October 9; he invoked his right to silence under *Mosley.* As we have seen, interrogation is not thereby permanently terminated; it is suspended for a "substantial" period. We hold that the interval from October 9 to October 10 was substantial. Moreover, even if the visitors' presumed conversation with Taylor—asking that he talk to Blevins only with an attorney present—were treated as evidence that Blevins had invoked his right to counsel, there still is no *Edwards* violation. Taylor did not reinitiate the dialogue with Blevins after the visitors spoke to him. Rather, Blevins contacted him later that evening.

■ The other statements, given on October 17 and October 22, also were products of appellant's own initiatives. Furthermore, neither statement was preceded by any invocation of the right to silence or of the right to counsel. Consequently, we find no per se violation of *Miranda* requirements in this case.

■ Accordingly, we turn to the issue of voluntary, knowing and intelligent choice—the foundational requirement for admissibility of incriminating statements and for the valid waiver of a previously invoked right. The issue is essentially a factual one, turning largely on the accused's state of mind and lending itself best to resolution by the trial court. Nevertheless, the question is said to possess such constitutional significance that it requires independent review on appeal, based upon the entire record. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). We need not detail the evidence beyond that already summarized here. Suffice it to say that we have examined the record and have concluded, as did the district judge, that appellant acted voluntarily, knowingly and intelligently when he chose to make pretrial statements without having his attorney present. The record shows no coercion. It does show repeated warnings to Blevins concerning his rights. Blevins initiated the conversations germane to our inquiry. The record suggests that Blevins became mentally unstable later in the proceedings but not at times pertinent here. Therefore, we conclude that the district judge did not err by refusing to suppress the statements later placed in evidence at trial.

■ Appellant further contends that all testimony of Dow Jennings, the eyewitness to the murder, should have been suppressed. This argument rests upon the dual hypotheses that Jennings was an accomplice and that testimony obtained from an accomplice, who is under a compulsion to testify in a particular fashion, is untrustworthy. Its admission would deny the de-

fendant a fair trial. *See Franklin v. State,* 94 Nev. 220, 577 P.2d 860 (1978). However, even if we accept these hypotheses, we find nothing in the record to support the assumption that Jennings, in fact, was compelled to give particular testimony. The immunity agreement between Jennings and the prosecutor recited that the only condition placed upon Jennings' testimony was that it must "be the truth." Jennings' testimony concerning Blevins' conduct was remarkably consistent with the statements given to the police by Blevins himself. The principal point of deviation, as one might expect, was the extent of Jennings' participation in the murder. But if Jennings had any tendency to hedge against personal responsibility for the crime, despite his grant of immunity, that tendency would have been open to evaluation by the jury. Weighing credibility is a routine jury function. We see no denial of due process in allowing Jennings' testimony to go to the jury, for such weight as they might have chosen to give it.

■ We have examined appellant's other arguments and find them to be unpersuasive. However, our review has disclosed a technical problem in the sentencing section of the judgment of conviction. The judgment purports to impose two separate, albeit concurrent, life sentences—one for the second degree murder and the other for the adjudication of persistent violator status. Our persistent violator statute, I.C. § 19–2514, does not establish a separate offense nor does it authorize a separate sentence. *See, e.g., State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (Ct.App.1984). Accordingly, we direct the district judge, upon receiving the remittitur from our Court, to modify the judgment by reciting that Blevins, having been found guilty of second degree murder and having been adjudicated a persistent violator, is given a single, indeterminate life term for the substantive offense.

The judgment is, in all other respects, affirmed.