957 P.2d 352

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Gregory KING, Defendant–Appellant.**

No. 23492.

Court of Appeals of Idaho.

April 24, 1998.

Finney & Finney, Sandpoint, for appellant. John A. Finney argued.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

John Gregory King appeals from the district court's order revoking probation and ordering execution of his sentence. We affirm.

## I.

## BACKGROUND

In May 1994, King pled guilty to grand theft by possession of stolen property. I.C. § 18–2403(4). The district court sentenced King to a unified term of incarceration of five years, with two years fixed. The district court retained jurisdiction for 180 days, and King was sent to participate in the rider program at the North Idaho Correctional Institution (NICI). After evaluation at NICI, the district court followed the review committee's recommendation and suspended King's sentence. The district court placed King on probation for five years.

In July 1995, a report of violation was filed against King. A hearing was held on

November 1, 1996, and King appeared without counsel. The district court questioned King as to whether he wanted to proceed without the assistance of counsel. Finding a waiver of counsel, the district court continued with the hearing. King admitted being in violation of his probation. The district court accepted King's admission, revoked King's probation and ordered execution of the previously imposed sentence. King appealed.

## II.

## DISCUSSION

### A. Right to Counsel

King alleges that he was denied the assistance of counsel during the probation revocation proceeding. King asserts that, because he did not consult with his previous court-appointed attorney, he could not have knowingly and intelligently waived his right to counsel. King also asserts that had he been offered the opportunity to consult with his attorney, "he could have been made aware that the court had discretion to grant or deny him credit for time served in California." Further, King asserts that there was an invalid waiver of counsel on the basis that he was not "fully aware of the potential penalties nor the dangers of not having counsel prior to proceeding without counsel."

■ A criminal defendant has the constitutional right to assistance of counsel at all critical stages of the criminal process. *State v. Ruth*, 102 Idaho 638, 641, 637 P.2d 415, 418 (1981); *State v. Blevins*, 108 Idaho 239, 242, 697 P.2d 1253, 1256 (Ct.App.1985). The defendant's right of counsel includes legal representation during probation revocation proceedings. *State v. Young*, 122 Idaho 278, 283, 833 P.2d 911, 916 (1992); *State v. Lindsay*, 124 Idaho 825, 828, 864 P.2d 663, 666 (Ct.App.1993). Thus, in the absence of a valid waiver, King was entitled to be represented by counsel at the November 1, 1996, probation revocation hearing.

■ A waiver of the right to counsel is valid only if it was effected knowingly, voluntarily and intelligently. *Ruth*, 102 Idaho at 642, 637 P.2d at 419; *Lindsay*, 124 Idaho at 828, 864 P.2d at 666. The burden is upon the state to show that a waiver of a constitutional right was voluntary, knowing and intelligent. *State v. Culbertson*, 105 Idaho 128, 130, 666 P.2d 1139, 1141 (1983); *State v. Wuthrich*, 112 Idaho 360, 364, 732 P.2d 329, 333 (Ct. App.1986). We examine the totality of the circumstances in determining whether a waiver is valid. *State v. Mitchell*, 104 Idaho 493, 498, 660 P.2d 1336, 1342 (1983); *State v. Buzo*, 121 Idaho 324, 327, 824 P.2d 899, 902 (Ct.App.1991).

■ Questions regarding whether a defendant's waiver of the right to counsel was voluntary, knowing and intelligent are essentially questions of fact turning upon the defendant's state of mind. *State v. Spradlin*, 119 Idaho 1030, 1036, 812 P.2d 744, 750 (Ct. App.1991); *Blevins*, 108 Idaho at 243, 697 P.2d at 1257. These issues, however, "possess such constitutional significance" that they require independent review on appeal. *Id.* Therefore, we review this issue *de novo.*

■ We first address King's assertion that he "could not waive his right to counsel without consulting with his already appointed counsel."[1] We analogize the case at bar with *Ruth*, 102 Idaho 638, 637 P.2d 415. In *Ruth*, the defendant had been appointed counsel by the district court. The defendant subsequently met with the prosecutor without his counsel present, and an agreement was reached in the case. The defendant proceeded to plead guilty. The defendant appealed his conviction, contending that there had not been a valid waiver of his right to counsel because the prosecutor, before meeting with the defendant, had neither informed nor secured permission of the defendant's counsel. The Idaho Supreme Court held that under both I.C.R. 44(a) and federal constitutional standards, the defendant had the right to have his court-appointed lawyer present at the meeting with the prosecutor. *Id.* at 641, 637 P.2d at 418. The court held, however, that "the right to counsel can be

---

1. Apparently, King was appointed a public defender on June 11, 1993, and nothing in the record indicates that counsel had withdrawn prior to the probation revocation hearing.

waived without notice to counsel." *Id.* at 642, 637 P.2d at 419.

The case at bar is more compelling than *Ruth.* Here, King waived the right to counsel in the presence of the district court and was warned by the district court of the dangers of proceeding without counsel. *See Id.* at 640–41 n. 2, 637 P.2d at 417–18 n. 2. Thus, under the circumstances of this particular case, we conclude that King could waive his right to counsel without his previously court-appointed counsel being present before the trial court. If this Court were to accept King's position, it would have the effect of elevating a defendant who desires to waive already retained counsel later in his proceedings over a defendant who waived counsel at an initial appearance. This we decline to do.

■ We next address whether King's waiver of counsel was effected knowingly, voluntarily and intelligently. At the November 1, 1996, probation revocation hearing, the district court questioned King regarding whether he wanted to be represented by counsel during the proceedings:

[COURT] The question I guess we need to address initially is do you wish to be represented by a lawyer?

[KING] No, sir.

[COURT] How old are you?

[KING] Twenty-two, sir.

[COURT] How much education do you have?

[KING] I graduated high school, sir.

[COURT] Have you ever been involved in any criminal proceedings before, trials, hearings?

[KING] Not a trial, sir, but I've been in a courtroom a few times.

[COURT] You understand that if you don't have a lawyer that you'll be required to represent yourself? I can't help you, [the prosecutor] can't help you as to any proceedings or technicalities of the issue?

[KING] Yes, your Honor, I do.

[COURT] Do you also understand that oftentimes these matters do turn upon technicalities, little nuances or little ways they can be looked at; and that if you don't have a lawyer, you may overlook some of those and nobody is going to call them to your attention?

[KING] Yes, your Honor, I understand.

[COURT] Have you ever heard the expression made that an individual who represents themselves in court has a fool for a client?

[KING] Well, yes, your Honor. I understand that, too, but I also understand that the only charge that I have pending against me is this violation, that would be absconding. And under my understanding, the maximum sentence I would get would be the rest of my sentence imposed upon me; correct?

[COURT] That's correct?

[KING] Then, yes, sir. I understand everything completely.

The district court continued:

[COURT] I would propose that depending—and I've been told you want to admit the violation here. I propose we take that all into consideration in disposition of this matter to avoid having to come back for another hearing. But that's something you have a right—and maybe you want a lawyer to talk about that with. That's one of the reasons I'm raising these issues about lawyers and waivers, and those sort of things.

[KING] Yeah. I understand that.

[COURT] Now, back to my question. Do you understand that sometimes a person who represents themselves in court, it's sometimes said that they have a fool for a client? And that's based upon the fact that sometimes they don't understand all the issues or they let their emotions get involved in it and they miss things.

Do you understand what I'm talking about?

[KING] Yes, I do, your Honor.

[COURT] Do you have any questions about that?

[KING] No, sir.

[COURT] Do you feel you're competent and capable to handle yourself and represent yourself on this matter?

[KING] I believe I can, sir.

[COURT] And do you understand that if either you admit the violation or if I find you to have violated your probation as alleged in this matter, I could impose the balance of whatever the suspended sentence was out here?

[KING] Yes, sir. I do.

[COURT] And just so we're clear on that, it was a fixed term of two years, followed by a three-year indeterminate term; total not to exceed five.

[KING] Yes, sir.

[COURT] Now, do you still want to proceed without a lawyer?

[KING] Yes, sir.

[COURT] I find that Mr. King is a competent—first of all, competent, articulate; that he has been advised of the potential risks of self-representation; that he has chosen to exercise those risks.

Let me ask you one other thing I forgot to ask. Do you understand, Mr. King, if you don't have the money to hire a lawyer, the State would hire one for you?

[KING] Oh, yes, sir. I understand that.

[COURT] Do you want a lawyer?

[KING] No, sir.

[COURT] I find that he's adequately been advised of his constitutional right to be represented by counsel. He knows that he could get one at no expense to himself, if he qualifies, and that he has made a knowing, intelligent, voluntary waiver of his constitutional right to counsel.

On review, we note that the district court questioned King in depth as to whether King chose to proceed without the assistance of counsel. The district court inquired as to King's age, his level of education and his familiarity with the proceedings. The district court advised King of the maximum potential penalty if King's probation was revoked. The district court also cautioned King several times about proceeding without the assistance of counsel and the potential risks of self-representation. King's erroneous assumption as to credit for time served is the type of risk avoided by not waiving counsel. Based on the record, we conclude that King's waiver of his right to counsel was effected knowingly, voluntarily and intelligently.

**B. Sentence Review**

King was sentenced to a unified term of incarceration of five years with two years fixed. King's sentence was suspended and probation imposed. While on probation, King absconded from supervision and was apparently incarcerated in California on unrelated charges for approximately thirteen months. After King was released from California's custody, he was transported to Idaho on a warrant for the probation violation. In revoking probation and ordering execution of his suspended sentence, the district court did not give King credit for the time he served in California on the unrelated charges. On appeal, King contends the district court erred in refusing to give him credit for the time he served in California.

Having thoroughly reviewed the record in this case, we conclude that the district court did not err in refusing to give King credit for time served in California on unrelated charges. *See State v. Hale*, 116 Idaho 763, 779 P.2d 438 (Ct.App.1989).

### III.

### CONCLUSION

We conclude that King's waiver of his right to counsel was effected knowingly, voluntarily and intelligently. We also conclude that the district court did not err in refusing to give King credit for time served in California on unrelated charges.

The district court's order revoking probation and ordering into execution his suspended sentence is affirmed.

LANSING, C.J., and SCHWARTZMAN, J., concur.