# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50057

STATE OF IDAHO,                                 )
                                                )   Filed:  February 14, 2025
    Plaintiff-Respondent,                     )
                                                )   Melanie Gagnepain, Clerk
v.                                              )
                                                )   THIS IS AN UNPUBLISHED
BENJAMIN CHARLES KNIGHT,                        )   OPINION AND SHALL NOT
                                                )   BE CITED AS AUTHORITY
    Defendant-Appellant.                      )
                                                )

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Oneida County.  Hon. Javier Gabiola, District Judge.

Judgment of conviction, <u>affirmed</u>; denial of motion to suppress, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Benjamin Charles Knight appeals from the judgment of conviction on three counts of unlawful possession of a firearm by a felon.  Knight claims the district court violated his Sixth Amendment rights by allowing him to proceed pro se at various pretrial proceedings, and later at trial with "shadow counsel," without ensuring he was knowingly, intelligently, and voluntarily waiving his right to counsel.  Knight also argues the district court erred in denying his motion to suppress based on a warrantless seizure.  For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement responded to a disturbance at Knight's residence and encountered Knight, his girlfriend, and his minor children.  Deputy Maughan asked Knight to move to another area and sit so they could talk.  Later, Deputy Maughan told Knight to "just stay right there for

1

me" while he checked on Knight's girlfriend. Officers were informed that Knight, a convicted felon, was in possession of at least three firearms. Knight admitted he knew of the firearms and the firearms were then confiscated by law enforcement. Knight was charged with three counts of felony unlawful possession of a firearm, Idaho Code § 18-3316(1).

At the initial arraignment, Knight was informed of the charges against him and all legal rights, including the right to counsel. Knight was working at the time and was advised that he would not qualify for a public defender. A few weeks later, Knight appeared for a preliminary hearing and requested a continuance in order to obtain counsel, which was granted.

After amendment of the complaint, an arraignment occurred in which Knight was advised of the charges and asked to enter a plea. Knight refused to enter a plea and stated that he could not afford an attorney at the time but was saving money to retain counsel. Knight also moved to dismiss the complaint. The district court entered a plea of not guilty on Knight's behalf and denied Knight's motion to dismiss. Knight later moved to continue the proceedings so that he could retain counsel.

From February to December 2020, hearings were held in which Knight appeared pro se and repeatedly explained that he had not been able to retain counsel, that he did not want a public defender, but that he wanted the "assistance of counsel." Knight clarified that he did not want an attorney to represent him and manage the case but that he wanted someone to help him with filing documents. The district court advised him that if he wanted an attorney to help represent him, he would need to file a request with the court for appointment of the public defender's office.

In December 2020, Knight again moved pro se to dismiss the complaint and filed a motion to suppress evidence based on a claimed warrantless seizure. The district court denied the motions, holding that Knight's interaction with the officers was voluntary and that he was not seized. In April 2021, during a pretrial conference, Knight claimed that he was not rejecting all assistance of counsel. He again stated that he wanted only the assistance of counsel but that he did not want to be represented. The court advised Knight that he could be appointed "shadow counsel," but that Knight must apply for it. Knight again stated that he wanted legal assistance, not representation. Knight agreed to apply for a public defender and was later appointed counsel to assist him.

The case proceeded to a jury trial in April 2022. During preliminary matters, Knight informed the district court that he was not prepared and had not submitted exhibits or a witness list to the court. During an exchange, the court again asked for clarification that counsel was not

2

representing Knight, and that Knight was representing himself. Knight responded that he was there as himself. Counsel then assisted during voir dire by questioning and striking potential jurors. The trial began and Knight represented himself, presenting an opening statement, questioning witnesses, stating objections, and giving closing argument. Counsel had limited involvement and seldom interjected only to conference with Knight off the record before allowing Knight to continue with his own representation. The jury convicted Knight on all three counts. Knight filed pro se motions to dismiss and for a new trial. In addition, Knight also complained that counsel had not been effective. The court denied the motions and advised that ineffective assistance of counsel claims are brought through post-conviction proceedings. Knight appeals.

## II.

## STANDARD OF REVIEW

When reviewing a trial court's determination regarding the waiver of a constitutional right, we accept the trial court's findings of fact if supported by substantial evidence; however, we freely review the court's application of constitutional requirements to the facts as found. *State v. Hoffman*, 116 Idaho 689, 691, 778 P.2d 811, 813 (Ct. App. 1989).

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Knight claims that the district court failed to ensure that he knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel. Knight asserts that because the record shows he never intended to waive his right to counsel, the district court violated his Sixth Amendment right. Knight also claims that the district court erred in denying his motion to suppress because, based on the officer's conduct, a reasonable person would believe they were not free to leave the encounter. The State argues that Knight has shown no violation of his Sixth Amendment

3

right where the record demonstrates that the magistrate and district courts advised him regarding his right to counsel, cautioned him against representing himself, repeatedly encouraged him to hire an attorney or apply for the services of a public defender, and ultimately appointed counsel who assisted Knight at trial. The State further argues that the district court correctly denied Knight's motion to suppress because Knight's interactions with law enforcement were consensual and, therefore, no Fourth Amendment rights were violated. In the alternative, the State argues that any seizure was justified based on reasonable suspicion of criminal activity.

## A.     Sixth Amendment Waiver

A criminal defendant has a constitutional right to the assistance of counsel at all critical stages of the criminal process. *Gideon v. Wainwright*, 372 U.S. 335, 339 (1963); *State v. Blevins*, 108 Idaho 239, 241-42, 697 P.2d 1253, 1255-56 (Ct. App. 1985). An accused also has the right to waive the assistance of counsel and to represent himself or herself. *See Faretta v. California*, 422 U.S. 806, 834 (1975); *State v. Averett*, 142 Idaho 879, 885, 136 P.3d 350, 356 (Ct. App. 2006). A waiver of the right to counsel is valid only if it was effected knowingly, voluntarily, and intelligently. *Averett*, 142 Idaho at 885, 136 P.3d at 356. The burden is upon the State to show that the waiver satisfied this standard. *State v. Hunnel*, 125 Idaho 623, 625, 873 P.2d 877, 879 (1994). If there was a deprivation of the right to counsel through the trial court's acceptance of an invalid waiver, the error is fundamental and therefore necessitates our independent review although the claim was not raised below. *Id.*; *Blevins*, 108 Idaho 239, 243, 697 P.2d 1253, 1257 (Ct. App. 1985).

There is no uniformity in American courts as to the precise requirements for a valid waiver of the right to counsel or even whether a specific judicial admonition regarding the risks of self-representation is necessary in all situations. *See State v. Jackson*, 140 Idaho 636, 639, 97 P.3d 1025, 1028 (Ct. App. 2004). Idaho courts examine the totality of the circumstances in determining if a waiver of the right to counsel is valid. *State v. Lovelace*, 140 Idaho 53, 64, 90 P.3d 278, 289 (2003); *State v. King*, 131 Idaho 374, 376, 957 P.2d 352, 354 (Ct. App. 1998). The analysis of whether a defendant's waiver is valid rests upon the individual facts of the case. *Hunnel*, 125 Idaho at 625, 873 P.2d at 879; *see also King*, 131 Idaho at 376, 957 P.2d at 354 (explaining that a valid waiver of counsel is a question of fact turning upon the defendant's state of mind). For a waiver to be knowing and intelligent, the defendant must be aware of the nature of the charges filed against him, the penalties that may result from those charges, and the dangers and

4

disadvantages of self-representation. *See Lovelace*, 140 Idaho at 64, 90 P.3d at 289; *State v. Lankford*, 116 Idaho 860, 865, 781 P.2d 197, 202 (1989); *see also United States v. Harris*, 683 F.2d 322, 324-25 (9th Cir. 1982).

Knight argues that he did not validly waive his right to counsel, including by accepting what the district court termed as "shadow counsel." While there is some case law that speaks to shadow counsel or hybrid representation,[1] we need not address the nuances of such. The United States Supreme Court has held that when the defendant manages his own defense, he relinquishes many of the traditional benefits associated with the right to counsel. *Faretta*, 422 U.S. at 835. More narrowly, the Court has held that the right to the assistance of counsel implies a right in the defendant to conduct his own defense, "with *assistance* at what, after all, is his, not counsel's trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). Lastly, the option to have standby or shadow counsel is discretionary and not a matter of constitutional right. *See Averett*, 142 Idaho at 886, 136 P.3d at 357.

Therefore, *Faretta* and *Wiggins* require that, where a defendant manages his own defense, even if he is given merely the *assistance* of counsel, the defendant must still knowingly, intelligently, and voluntarily waive his right to counsel. As such, when a defendant is given shadow counsel or hybrid representation, it is implied that he is agreeing to proceed pro se and therefore a waiver is required. *See State v. Williams*, 163 Idaho 285, 297, 411 P.3d 1186, 1198 (Ct. App. 2018) (clarifying that the option for standby counsel applies only where a defendant

---

[1]  Hybrid representation has been defined as follows:

[H]ybrid representation consists of concurrent self-representation and representation by counsel. The hybrid model differs considerably from standby or advisory counsel in that it constitutes a "co-counsel" model which involves actual assistance of the attorney in the trial process. In the advisory-counsel model, the attorney generally only counsels the defendant, although if the need arises the attorney may assist in the presentation of motions or the offering of objections. Standby or advisory counsel normally are not permitted to represent actively the defendant, while hybrid counsel actually share in such activities as jury selection, opening statements, examination of witnesses, and closing arguments. Pro se defendants act as their own counsel, but may consult with the standby counsel at reasonable times. By way of contrast, in hybrid cases, the accused and the attorney share the role of counsel, although the defendant may well take the lead in the case.

Joseph A. Colquitt, *Hybrid Representation: Standing the Two-Sided Coin on Its Edge*, 38 Wake Forest L. Rev. 55, 74-75 (2003).

elects to represent himself). Knight was appointed only shadow counsel and therefore represented himself.

Because Knight proceeded without representation of counsel, we are required to determine whether he knowingly, intelligently, and voluntarily waived his right to counsel for purposes of the Sixth Amendment. Knight appeared without counsel at his initial arraignments in October and November 2019. Knight indicated he was working at the time, and the magistrate court told him that he would not qualify for a public defender. Knight requested and obtained a continuance of the preliminary hearing so that he could obtain counsel. At his preliminary hearing, Knight again appeared without counsel. When the magistrate court asked if he was "going to continue to represent himself," Knight answered, "I stated the last two times that I want a counsel, but I can't afford one." The magistrate court noted that Knight had not applied for, and likely would not qualify for, a court-appointed attorney, and proceeded with the preliminary hearing. The magistrate bound Knight over to the district court on the charges.

At his arraignment on January 10, 2020, Knight appeared without counsel and told the district court he wanted counsel, but "can't afford an attorney" and was "saving up money" to get one. The court cautioned Knight against self-representation, including telling him "it takes great skill and understanding of the law and rules to represent yourself" and "[t]hat's why it's always better" to be "represented by an experienced attorney who understands the law and the rules and can represent them well." In response to the court's question as to whether Knight understood, Knight said he wanted counsel and again told the court he was "saving money to afford an attorney."

In February 2020, Knight informed the district court he had been talking with counsel in Utah and was still saving money to hire him. The court granted a continuance to allow Knight more time to hire counsel. In May 2020, Knight told the court that he had been unable to retain counsel, and that he did not "have the money to buy one." When the court suggested that Knight apply for a public defender, the following colloquy occurred:

KNIGHT: I don't want someone to represent me. I need legal counsel that can help me file my paperwork, help me do my motions. I don't want somebody that can do whatever they want that's an officer of the Court. . . . I need legal counsel, because that's what I have the right to. I don't have a right to an attorney. I have a right to a legal counsel, and that's what I'm seeking.

6

| | |
|---|---|
| COURT: | Okay. Well, you do have a right to an attorney. You do have a right to counsel. And so I understand what you're stating. You want to have legal counsel assist you. |
| KNIGHT: | Yes. |
| COURT: | But in order for you to do that, you need to apply for a public defender. |

In August 2020, Knight again appeared without counsel and informed the district court:

| | |
|---|---|
| KNIGHT: | Because I'm not going to be signing anything over, and I don't need to give your corporation any information about me. I don't want to be represented by anything or anyone. I need assistance of counsel. I don't need somebody that can steamroll me for the courts, because I don't want to be a ward of the court. |
| COURT: | Okay. So you're saying that you are refusing to retain an attorney and represent yourself. Is that correct? |
| KNIGHT: | No, that is not correct. |
| COURT: | Well, who else is going to be representing you, Mr. Knight, if it's not you? |
| KNIGHT: | I don't represent anything. I am me. |
| . . . . | |
| KNIGHT: | I want assistance of counsel. I don't want anybody that can do whatever they want for me, no. I have the right to assistance of counsel, not the assistance of an attorney. |

On April 16, 2021, the issue of counsel was again addressed:

| | |
|---|---|
| KNIGHT: | I've also got some correction to make on the record from I believe it was the last time I was in court. I believe the Court understood that I was rejecting all assistance of counsel, and that is--was not my intention in any way, shape, or form. But I believe that's how it was understood by the Court and the prosecutor, and that's not what I-- that was not my intentions at all. |
| . . . . | |
| | I want assistance of counsel. I don't want to be represented. |
| COURT: | So you want shadow counsel. But you've never asked for that. In any of the motions I've seen, you've never asked for shadow counsel. |
| KNIGHT: | I--I want effective assistance of counsel, not representation. There's--I mean, I want somebody that can help me out with the procedures, but I don't want someone else being able to call the shots on everything that's done. I want positive, good input. That's all I wanted. |
| COURT: | So what you're saying--we call that shadow counsel. |
| KNIGHT: | I didn't even know there was such a thing. |
| COURT: | Sometimes--sometimes we appoint an attorney to give advice, provide assistance as necessary, counsel with the defendant, but not speak in the proceedings. That's--and then the defendant does his |

7

own cross examination or examination of witnesses or whatever. It's not an ideal situation. I've seen it in court. It's not ideal. Be that as it may, you've never asked for it. You've never once asked for that.

KNIGHT:    I have stated I want effective assistance of counsel. I haven't been working in the last year due to COVID. I don't have the funds to go out and get somebody that can do that. I don't have the money to just hand over for that. That's all I've ever been offered with the Court.

COURT:    But you've been asked several times by Judge Gabiola to apply for a public defender. Then if you had applied for a public defender and you qualified for one and one was appointed, then an arrangement could be made as to what the nature of that representation or assistance would have been. But you never applied for a public defender anyway.

KNIGHT:    I'd never even heard--

COURT:    You can't afford one, so I'm on the horns of a dilemma, and so would Judge Gabiola be. You want effective assistance, but you're not asking for it. You need to apply for a public defender if you want an attorney in any way, shape, or form. You see what I'm saying? You understand that?

KNIGHT:    That--a public defender was a--they were offering to have somebody represent me. From my understanding, they were--wanted someone to represent me.

COURT:    I understand what you're--

KNIGHT:    I want assistance, not representation.

COURT:    Okay.

. . . .

COURT:    If you want to apply for a PD and get somebody to assist you in some kind of shadow way, you have to apply. I'm telling you that right now. And I'm going to make a note to Judge Gabiola. I'm telling him--I'm going to put in here you want counsel to assist you but not represent you, and I told you that you could not even have that in this case unless you applied for a public defender. Are we clear about that? Do you understand?

KNIGHT:    That I -

COURT:    Do you understand what I just said? You get what I'm saying?

KNIGHT:    You want me to apply.

COURT:    If you want--if you want an attorney--

KNIGHT:    If I want--

COURT:    --to assist you in any way, you have to apply. That's what I'm saying.

KNIGHT:    I'll apply.

Later, the district court accepted Knight's application for an attorney to be shadow counsel, and appointed counsel. The following discussion occurred:

8

COURT:    You've made it very clear that you want counsel in some form. Now, whether you have an attorney speak for you in a regular capacity or have shadow counsel--at this point I think you've made it clear you want shadow counsel. So I am going to appoint you shadow counsel. All right? At this point that issue is no longer going to be an issue. I'm going to appoint Mr. Morrissey here as your shadow counsel.

Knight argues that although the district court attempted to accommodate him, it failed to ascertain whether he understood the nature of his right to counsel, or whether he understood that he would be necessarily waiving that right by accepting the court's proposal that he proceed pro se with "shadow counsel" only. The record establishes that Knight was advised of, and understood, his right to counsel. The court explained Knight's right to counsel and the risks of self-representation. Knight made clear on every occasion that he understood his right to counsel. Knight knew he could have counsel represent him, in which situation counsel would make decisions and present the case. Knight made clear that he was rejecting this option. Knight made clear that he wanted counsel to assist him only and that Knight alone would make decisions and present the case unless he otherwise directed counsel. The magistrate court and the district court multiple times advised Knight that he had a right to the appointment of counsel and it would be in his best interest. As shown above, when the option of shadow counsel was raised it fit exactly into what Knight had expressed he wanted. Even on appeal, Knight does not contend that he ever wanted counsel to represent him. While perhaps the district court was not required to appoint counsel to the limited role of assisting Knight, Knight got what he demanded, with full knowledge of the right to be represented by counsel and the pitfalls of proceeding pro se with or without the assistance of counsel.

Rather than giving Knight the binary choice between being completely on his own pro se or having counsel fully represent him, the district court explained the option to have shadow counsel assist him without representing him.[2] He exercised his right to represent himself and was

---

[2]    Knight cites to *State v. Dougherty*, Docket No. 43583 (June 22, 2018), an unpublished decision from this Court. *Dougherty* is distinguishable from this case. There, Dougherty declined representation of counsel and wanted appointment of counsel to assist him. *Id.* at 6. Ultimately, the district court gave Dougherty the singular choice between exercising the right to have counsel represent him or to proceed pro se. Dougherty continued to believe that he had a right to counsel to merely assist, refused appointment of counsel, proceeded to trial without counsel, and provided no defense. *Id.* at 7. This Court held that, under the circumstances, the district court had not

9

granted his request to have shadow counsel available to assist. He accepted the responsibility to manage his own defense and thereby relinquished the traditional benefits of being represented by counsel. Knight knew full-well the consequences of rejecting representation by counsel. We therefore hold that Knight knowingly, intelligently, and voluntarily waived his right to counsel.

## B. Motion to Suppress

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between law enforcement and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Florida v. Royer*, 460 U.S. 491, 498 (1983). So long as law enforcement does not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Fry*, 122 Idaho at 102, 831 P.2d at 944.

Knight was not seized for purposes of the Fourth Amendment. At the hearing on the motion to suppress, both responding officers' testimony and video footage of the encounter with Knight were admitted. There is no claim that the officers used any physical force to restrain Knight, and the videos did not show any such force. Instead, Deputy Maughn approached Knight to ask him a few questions about the situation. The district court found that there were no lights or sirens shown in the videos. Deputy Maughn did not threaten or otherwise show aggression towards Knight. The mere fact that the officers were in uniform and were equipped with their service weapons is insufficient to show that there was a show of force or authority by law enforcement. *See State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999) (explaining that "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred") (quoting *Terry*, 392 U.S. 1, 19 n.16 (1968)). The officers also never placed their hands on their firearms or

---

ensured that Dougherty understood the nature of his rights and the consequences of abandoning those rights. *Id*.

10

displayed their weapons in a threatening manner. Knight, on his own, requested and volunteered for a pat-down search. There was no other physical touching between Knight and the officers. The conversation between Knight and the officers was cordial and Knight accommodated the officers' requests. These interactions show that Knight consented to the encounter and a reasonable person would not feel that their liberty was being restrained by the officers.

Further, because the officers were responding to a potential domestic violence call, the officers ensured that Knight and his girlfriend were separated while the officers asked them questions. Deputy Maughn testified that it is common practice to separate, without detaining or arresting, individuals who may have been in a confrontation. The purpose of the separation is to ensure the safety of everyone involved. At one point while Deputy Maughn was talking to Knight, one of Knight's children came up to them and Deputy Maughn allowed the child to talk to Knight. After asking Knight to stay where he was, Deputy Maughn turned his back on Knight and went to check on Knight's girlfriend. At the suppression hearing, Deputy Maughn testified that this conduct towards Knight was not typical of his behavior when he detains or arrests someone:

| STATE: | And just in regards to either detention or an arrest, but most particularly to an arrest, is this normal for you, your actions here in this video, if you are placing somebody under arrest? |
|---|---|
| DEPUTY MAUGHN: | No. If I'm placing somebody under arrest, that is not how I stand, look, or talk. |
| STATE: | Would you ever invite a child over to talk to you guys if somebody was--you're placing somebody under arrest or if they were under arrest? |
| DEPUTY MAUGHN: | Absolutely not. |
| STATE: | Would you ever turn your back on somebody and leave them alone if they were placed under arrest? |
| DEPUTY MAUGHN: | Nope. |
| STATE: | If you had detained somebody, would you leave them un-handcuffed and alone, turning your back to them? |
| DEPUTY MAUGHN: | No. |

Deputy Maughn's conduct, along with his request to have Knight remain seated, was reasonable, did not convey a message that compliance was required, and did not rise to the level of a seizure. *See Fry*, 122 Idaho at 102, 831 P.2d at 944 (stating that unless the officer conveys a message that compliance is required, the encounter is deemed consensual). As a result, there was no violation of Knight's Fourth Amendment rights. Therefore, the district court's denial of the motion to suppress is affirmed.

11

## IV.

## CONCLUSION

Knight knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel.  Knight was not seized during his encounter with law enforcement.  Therefore, the order of the district court denying Knight's motion to suppress and Knight's judgment of conviction are affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.